UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re | : CHAPTER 11 |
| MARIO M. WATKINS | : CASE NO. 14-69311 WLH |
| Debtor | : |
| | : |
| | : |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**

COMES NOW, Mario M. Watkins, debtor in possession herein and amends his Chapter 11 Plan of Reorganization filed on September 30, 2015 [Docket No.45] as follows.

1. Article II, Paragraph 2.4 is amended to provide for the IRS's Claim.
2. Article III, Paragraph 3.2 Class 3 is amended to provide that the IRS, priority claim shall be paid within 60 months of the petition date and that the IRS unsecured claim shall be paid in Class 4.
3. Article III, Paragraph 3.2. Class 4. Is amended to provide for payment of the $4,808.40 general unsecured claim of the IRS.

Debtor's Amended Plan of Reorganization is attached hereto.

Prepared and submitted,

                              GIDDENS , MITCHELL & ASSOCIATES P.C.
                              Attorney for Debtor
                              /S/Ken Mitchell
                              BY:  KEN MITCHELL,

5931 Snapfinger Pkwy, Suite 555
Decatur, Georgia  30035     770-987-7007
E-mail gmapclaw1@gmail.com

1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re | :    CHAPTER 11 |
| MARIO M. WATKINS | :    CASE NO. 14-69311 WLH |
| Debtor | : |
| | : |
| | : |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**

For purposes of this "Amended Plan of Reorganization," the following terms shall have the meanings as set forth hereinbelow:

**ARTICLE I; DEFINITIONS**

1.1 "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in §503(b) of the Bankruptcy Code and referred to in §507(a)(1) of the Bankruptcy Code, including, without limitation: (i) the actual, necessary costs and expenses of preserving the estate and administering the Case (other than such expenses which by their express terms are not due or payable by the Effective Date) that arose or accrued or that shall arise or accrue in the ordinary course of business during the period between the Petition Date and the Confirmation Date; (ii) any Professional Fee Claim; and (iii) any fee or charge assessed against the Debtor under 28 U.S.C. §1930.

1.2 "Allowed Claim" means any claim, other than an Administrative Claim, against the Debtor to the extent that: (i) it is a Filed Claim and no objection has been filed as to such Claim; or (ii) such Claim has been allowed by this Plan or by a Final Order of the Court. As to an Administrative Expense, "Allowed Claim" means approved by Final Order, after application, notice and hearing as required by the Code, but not including any Administrative Claim which may have previously been paid.

1.3 "Bankruptcy Code or Code" means Title 11 of the United States Code, as amended from time to time.

1.4 "Bankruptcy Code or Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Court, as amended from time to time.

1.5 "Bar Date means: (i) with respect to claims arising from the rejection of an executory contract or unexpired lease pursuant to the Plan, the first Business Day that is 30 days after the Effective Date unless another date is set by order of the Court; (ii) with respect to Administrative Claims that accrued or were incurred during the period between the Petition Date and the Confirmation Date, the Bar Date shall be the Effective Date or such other date set by the Court; and (iii) with respect to all other claims.

2

1.6 "Business Day" means any day other than (i) a Saturday, (ii) a Sunday, and (iii) any other day on which banking institutions in Atlanta, Georgia, are required or authorized to close by law or executive order.

1.7 "Case" means the Chapter 11 bankruptcy case of the Debtor as filed and presently pending in the Court.

1. 8 "Claim" means a claim, as defined in §101 (5) of the Bankruptcy Code, against the Debtor.

1.9 "Class" means a class of Claims or Interests pursuant to §1123(a) (1) of the Bankruptcy Code and as defined in the Plan.

1.10 "Confirmation Date" means the date upon which the Court enters the Confirmation Order.

1.11 "Confirmation Order" means the Order of the Court confirming the Plan.

1.12 "Court" means the United States Bankruptcy Court for the Northern District of Georgia or any other court of the United Stats with authority and jurisdiction over the Case and, with respect to any particular action, proceeding or matter arising under or related to the Case, any other court which may be exercising jurisdiction over such proceeding.

1.13 "Creditor" means a person or entity that is the Holder of a Claim.

1.14 "Debtor" means MARIO M. WATKINS

1.15 "Disclosure Statement" means the Disclosure Statement filed with respect to this Plan, as may be further amended or modified.

1.16 "Effective Date" means the thirtieth (30th) calendar day after the Confirmation Date.

1.17 "Filed Claim" means a Claim as to which: (i) proof of claim is filed in the Court on or before the Bar Date; (ii) a proof of claim is deemed filed under §1111(a) of the Bankruptcy Code; or (iii) a proof of claim was filed late with leave of the Court.

1.18 "Final Decree" means a Final Order of the Court closing the Case.

1.19 "Final Order" means an order or judgment of a court (including one approving a settlement) as entered on the docket which: (i) shall not have been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) if appealed from, shall have been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or

rehearing thereof shall have expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

1.20 "General Unsecured Claims" means all Claims arising on or before the Petition Date which are neither Secured nor Priority Claims.

1.21 "Holder" means the beneficial owner of any Claim or Interest.

1.22 "Insider" shall include, but not be limited to, the persons set forth in §101(31) of the Bankruptcy Code.

1.23 "Interests" means any and all rights, claims, and interest of any nature in the Debtor as of the Petition Date, and includes without limitation any Claim of the holder of any equity interest arising out of or relating to a Claim for rescission or damages arising from the purchase, sale, transfer, or other disposition or other contractual rights relating to any equity interest, for rights arising out of any redemption or put, or for reimbursement, indemnity, subrogation or contribution on account of any such Claim.

1.24 "Order of Confirmation" means the order entered by the Court confirming the Plan in accordance with §1129 of the Bankruptcy Code.

1.25 "Petition Date" means October 2, 2014, the date upon which the Debtor filed its Voluntary Petition.

1.26 "Plan" means this "Plan of Reorganization" as it may be amended or modified from time to time.

1.27 "Priority Claim" means a claim which is entitled to priority under §507) of the Bankruptcy Code.

1.28 "Professional Fee Claim" means a Claim for compensation earned, and reimbursement of expense incurred, by the attorneys, accountants, or other professionals employed by the Debtor with approval of the Court.

1.29 "Reorganized Debtor" means the Debtor on and after the Confirmation Date.

1.30 "Schedules" means the schedules of assets and liabilities and any amendments thereto filed with the Court In accordance with §521 of the Bankruptcy Code.

1.31 "Secured Claim" means, as of the date of determination, a Claim to the extent it is secured on such date by a properly perfected lien on any property of the Debtor and such lien is not the subject of an avoidance action on such date.

4

## ARTICLE II: CLASSIFICATION OF CLAIMS AND INTEREST

2.0 "Unclassified Claims" shall consist of all Allowed Claims for costs and expenses of administration as defined in the Code for which application for the allowance thereof or a proof of claim therefore is filed as provided in the Plan, as allowed, approved, and ordered paid by the Court and shall also include any and all fees due and payable to the United States Trustee under applicable law.

2.1 "Class 1". The secured claim of HSBC/Beneficial secured by a note and security deed on Debtor's residence at 3780 Sherbrook CT, College Park GA 30349.

2.2 "Class 2". The secured claim of Select Portfolio Servicing, Inc., as Servicer for Equicredit Corporation of America (Select). The claim is secured by a note and security deed on Debtor's property located at 4022 Robin Circle, Atlanta, GA 30349.

2.3 "Class 3". The unsecured priority claim of the Internal Revenue Service.

2.4 "Class 4 the unsecured claims of.

1. Bank of America
2. Chase
3. Citibank USA
4. Citifinancial
5. Emory Adventist Hospital Smyrna
6. Macy's
7. IRS
8. Portfolio Recovery
9. Office Depot
10 Sears
11. The Home Depot

2.5 "Class 5" The unsecured claims of debtor's student loan creditors"

1. Academic Loan Group/gl, Claims Filing Unit
2. Navient Solutions, Inc.(Suntrust Bank)

2.6. "Class 6". The general unsecured claim of McNally Weeks.

2.7. "Class 7". Claim of Tamla Watkins.

5

**ARTICLE III:      TREATMENT OF CLAIMS AND INTEREST**

3.1     Unclassified Claims

Each Holder of an Allowed Administrative Claim shall be paid: (i) cash or its equivalent in the full amount of its Allowed Administrative Claim on the later of the Effective Date and the dates such Claim is allowed or as soon thereafter as is practicable, or (ii) as the holder of the Allowed Administrative Claim and the Debtor may otherwise agree; provided, however, that any Allowed Administrative Claim may be paid in accordance with the ordinary business terms of payment of such Allowed Administrative Claim. Notwithstanding the foregoing, parties entitled to Professional Compensation shall receive cash in the amount awarded after a Final Order is entered by the Bankruptcy Court approving such Professional Compensation Claim, which may be filed at any time prior to entry of a Final Decree. Notwithstanding anything contained in the Plan to the contrary, any fees due to the United States Trustee shall be paid as and when they come due and prior to Confirmation, as well as those that accrue post-confirmation pursuant to 28 U.S.C. Section 1930 (a) (6), as amended by Section 211 of Public Law 104-99 (110 Stat. 26, 37-38), effective January 26, 1996.

3.2     Classified Claims

Class 1. The secured claim of HSBC/Beneficial. HSBC asserts a claim against the Debtor pursuant a note and deed to secure debt ("the note") on Debtor's primary residence. There is no mortgage arrearage. Debtor shall remain liable to HSBC on the note and shall pay HSBC the regular monthly payment of $1,630.00 per month pursuant to the terms of the note.

Class 2. The secured claim of Select secured by a note and security deed on Debtor's property located at 4022 Robin Circle, Atlanta, GA  30349. Select's filed a $154,987.87 secured claim. The debtor places the value of this property at $120,000.00. The note securing Select's claim shall be modified so as to reduce the amount owed to Select on the 4022 Robin Circle, Atlanta, GA  30349 to $120,000.00. Debtor shall remain liable on the note as modified. The modified note shall be amortized over a 15 year period at five percent (5.25%) interest. Beginning on the 1st business day of the 1st month following the effective date of the plan, Select shall be paid $1,159.00 per month. Said payment shall continue on the 1st day of each month thereafter for 180 months until the claim is paid in full as provided herein.

Class 3. The unsecured priority and general unsecured claims of the Internal Revenue Service (IRS). The IRS filed and unsecured priority claim in the amount of $24,826.49 and a general unsecured claim in the amount $4,808.40. The IRS shall be paid the present value of its priority claim plus 4.5% percent interest within 60 months of the petition date. The unsecured portion of the IRS's claim shall be paid in class 4.

6

Beginning on the 5th business day of the 1st month following the effective date of the plan, the IRS shall be paid $675.76 per month. Said payment shall continue on the 5th day of each month thereafter the IRS is paid in full as provided herein.

Class 4 The general unsecured claims of the following creditors:

| | | |
|---|---|---:|
| 1. | Bank of America | $ 32,756.00 |
| 2. | Chase | 7,620.00 |
| 3. | Citibank USA | 4,918.00 |
| 4. | Citifinancial | 5,335.00 |
| 5. | Emory Adventist Hospital Smyrna | 952.00 |
| 6. | IRS | 4,808.40 |
| 7. | Macy's | 7,002.00 |
| 8. | Portfolio Recovery | 880.00 |
| 9. | Office Depot | 301.00 |
| 10. | Sears | 4,500.00 |
| 11 | The Home Depot | 200.00 |
| | Total | $104,260.27 |

General unsecured creditors shall be paid 10% of their respective claims over a 36 month period unless sooner paid, beginning 30 days from the effective date of the plan, in full satisfaction of their respective claims.

2.5 "Class 5" The unsecured claims of debtor's student loan creditors"

| | |
|---|---:|
| 1. Academic Loan Group/gl, Claims Filing Unit | $226,082.85 |
| 2. Navient Solutions, Inc. (Suntrust Bank) Claim #2 | 55,504.57 |
| 3. Navient Solutions, Inc. (Suntrust Bank) Claim #3 | 66,504.92 |
| 4. Navient Solutions, Inc. (Suntrust Bank) Claim #4 | 27,412.11 |
| 5. Navient Solutions, Inc. (Suntrust Bank) Claim #5 | 56,014.39 |
| Total | $471,518.84 |

As of the date of this plan debtor is a student and is expected to complete his studies in May of 2016. The payments on the student loans are deferred until 6 months following the date he completes his education or is no longer a student. Under the plan Academic Loan Group/gl and the Navient claims will be paid $250 per month each beginning December 1, 2016. Debtor does not waive his right to apply for waiver and or forgiveness of the student loans under any Federal or State Student Loan Forgiveness Program.

7

2.6. "Class 6". The general unsecured claim of McNally Weeks. McNally Weeks filed an unsecured claim in the amount of $7,466.16. McNally Weeks shall be paid $750.00 as full satisfaction of its claim. McNally Weeks shall be paid $750.00 on the distribution date.

2.7. "Class 7". The $9,141.00 unsecured claim of Tamla Watkins. Debtor disputes this claim. Tamla Watkins will be paid $2,285.00 as full satisfaction of her claim over 12 months. Beginning on the 5th day of the 1st month following the effective date of the plan, Tamla Watkins will be paid $190.41 per month. Said payment shall continue on the 5th day of each month thereafter until the claim is paid in full as provided herein. Debtor does not waive any rights or defenses he has or may have to dispute or set off the claim owed to Tamla Watkins.

3.3. Disputed Claims. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either; (1) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (2) no proof of claim has been filed, and Debtor has scheduled such claim as disputed, contingent, or unliquidated.

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable Order. Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Bankruptcy Rule 9019.

**3.4 Additional Provision Applicable to All Classes.**

Notwithstanding any other provision of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payment and distribution in respect of any Claim which at such date or time is disputed, unliquidated, or contingent shall not be made until such Claim becomes an Allowed Claim, whereupon such payment and distribution shall be made as provided in the Plan.

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN; IMPAIRMENT

The Classes 2, 3, 4, 6 and 7 are impaired under the Plan and will be allowed to vote on the Plan. Class 5 Creditors claims are barred and are not allowed to vote.

Except as otherwise required by the Bankruptcy code or the Court or unless deemed to have rejected the Plan, each holder of a Claim that is impaired under the Plan is entitled to vote to accept or reject the Plan if its Claim is an Allowed Claim, or its Claim has been temporarily allowed for voting purposes only by order of the court

8

pursuant to Bankruptcy Rule 3018 (in which case such Claim may be voted in such temporarily Allowed amount).

## ARTICLE V:   MEANS FOR EXECUTION OF THE PLAN

Debtor will continue in possession of his assets after confirmation. Debtor's source of income is monthly income from his employment with Atlanta Public Schools and rental income from his property at 4022 Robin Circle, Atlanta, Georgia 30349. Debtor's Chapter 11 payment schedule, debtors revenues and expenses as of July 2015 and debtor post confirmation budget are attached hereto in Exhibit "A".

## ARTICLE VI:   TREATMENT OF UNEXPIRED LEASE AND EXECUTORY CONTRACTS.

Debtor holds no unexpired leases or executory contracts it wishes to reject.

## ARTICLE VII: EFFECT OF CONFIRMATION; VESTING OF PROPERTY; DISCHARGE; INJUNCTION; DEFAULT

7.1 Binding Effect. On the Confirmation Date, the provisions of the Plan shall be binding on the Reorganized Debtor, the estate, all Creditors, all Holders of Claims and Interests and all other parties-in--interest whether or not such entities are impaired and whether or not such entities have accepted the Plan.

7.2 On or after the Effective Date, all property of the estate of the Debtor shall vest in the Reorganized Debtor, free and clear of any and all Claims, liens, charges or other encumbrances or Interests except as may be specifically provided for otherwise in the Plan. On and after the Effective Date, the Reorganized Debtor may use, acquire and dispose of property without supervision or approval of the Bankruptcy Court, except as may be otherwise set forth in the Plan.

7.3 Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

7.4 Injunction. The Confirmation Order shall operate as an injunction against any acts against the Reorganized Debtor and its property to initiate, prosecute, enforce, liquidate, collect or otherwise assert any Claim or Interest against the Reorganized Debtor and its property except as specifically provided in the Plan.

7.5 Default. If the Reorganized Debtor defaults in its payment obligations hereunder to a Creditor after this case has been closed by the Court, then such Creditor may serve a written "notice of default" to the Reorganized Debtor via Certified U.S. Mail, Return Receipt Requested, addressed to the Reorganized Debtor at the address of the Debtor as reflected in the electronic records maintained by the Clerk of Bankruptcy Court. If the Reorganized Debtor does not cure said default within 30 days of receipt of said written notice of default, then the Creditor may (a) accelerate and enforce the entire amount of its Allowed Claim; (b) exercise any and all rights and remedies it may have under applicable law; and/or (c) seek such relief as may be appropriate in this Court. In addition, the Plan provides that the Court may retain jurisdiction to hear certain matters even after the case has been closed.

## ARTICLE: VIII MISCELLANEOUS IMPLEMENTATION PROVISIONS

**8.1 Method of Cash Distribution.** Any cash payment to be made pursuant to the Plan may be made by draft, check, wire transfer, or as otherwise provided in any relevant agreement or applicable law. Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next business day. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect to such Claim any distribution in excess of the Allowed amount of such Claim.

**8.2 Rounding.** Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

**8.3 Objections to Claims.** At any time prior to entry of a Final Decree, the Debtor and the Reorganized Debtor, shall be allowed to object to Claims. Once an objection has been resolved, the Debtor shall pay the Allowed Claim pursuant to the terms of the Plan. The Debtor and Reorganized Debtor shall have authority to file, settle, compromise, withdraw, or litigate to judgment objections or Claims.

**8.4 Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of Georgia.

## ARTICLE IX: RETENTION OF JURISDICTION

Notwithstanding Confirmation of the Plan or the Effective Date having occurred, the Court shall retain jurisdiction of this case pursuant to and for the purposes set forth in Section 1127(b) of the Code, and for the following purposes:

(a) Classification of the Claim of any Creditor, the reexamination of Claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to creditors' Claims. The failure of any party in interest to object to or to examine any Claim for the purpose of voting shall not be deemed to be a waiver of such party's right to object to or to examine such Claim in whole or in part for any other purpose.

(b) Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action on the Confirmation Date, between the Reorganized Debtor and any other party, including, but not limited to, any right to recover assets pursuant to the provisions of the Code and any right to recover assets for whatever purpose. In addition, the Court's powers shall include, but not be limited to, the power to hear, determine, and approve settlements of such litigation; appoint, designate, or approve a disbursing agent or agents to receive the proceeds of such litigation subject to further order of the Court; hear, determine, and allow the payment of expenses incidental to such litigation; and make such other orders and determinations as may be reasonable and proper in these premises.

(c) Correction of any defect, curing of any omission, or reconciliation of any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan.

(d) Modification of the Plan after confirmation pursuant to the Rules and the Code.

(e) Enforcement and interpretation of the terms and conditions of the Plan.

(f) Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and the Reorganized Debtor and to impose such litigations, restrictions, terms, and conditions of such titles, rights, and powers as the Court may deem necessary.

(g) Determination of whether a default has occurred under the Plan, and entry of such orders as the Court may deem necessary to enforce the provisions of the Plan.

ARTICLE X:  MISCELLANEOUS

    10.1    Headings. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meanings hereof.

    10.2    Reservation of Rights. Neither the filing of the Plan, nor any statement or provision contained herein, nor the taking by any creditor of any action with respect to the Plan, shall (1) be or be deemed to be an admission against interest, and (2) until the Effective Date, be or be deemed to be a waiver of any rights which any party in interest may have against any other party in interest or any of its property, and until the Effective Date all such rights are specifically reserved. In the event that the Effective Date does not occur, neither .the Plan nor any statement contained in the Plan may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of the reorganization case involving the Debtor.

    10.3    Modification of the Plan. The Debtor and the Reorganized Debtor may modify this Plan pursuant to §1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits. Said modification my be without notice or hearing, or after such notice and hearing as the Court deems appropriate, if the court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. Without limiting the generality of the foregoing, the Plan may be modified after notice and hearing to entities which have requested notice pursuant to Bankruptcy Rule 2002(i). In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Court finds that the modification materially and adversely attests the rights of parties in interest which have cast said votes. The Debtor reserves the right in accordance with §1127 of the Bankruptcy code to modify this Plan at any time before the Confirmation Date.

    10.4    Revocation of Plan. The Debtor reserves the right, unilaterally and unconditionally, to revoke and/or withdraw the Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal the Plan shall be deemed null and void and of no force and effect.

    10.5    Successors and Assigns. The rights, duties and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

    10.6    Prepayment. Provided that it is not in default of its obligations under this Plan, the Reorganized Debtor may prepay, without penalty, all or any portion of an Allowed Claim at any time.

    10.7 Supremacy Clause. In the event of any conflict between the Disclosure Statement and the Plan, the terms of the Plan shall control.

## ARTICLE XI: REQUEST OF CONFIRMATION PURSUANT TO 1129(b)

In the event that all requirements for confirmation are met except for the provisions of § 1129(a) (8) of the Bankruptcy Code, the Debtor requests that the Plan be confirmed pursuant to §1129(b) of the Bankruptcy Code.

WHEREFORE, the Debtor proposes the within and foregoing Plan of Reorganization

This_____ day of _____ 2015

/S/Mario M. Watkins
MARIO M. WATKINS, DEBTOR

Prepared and submitted,
GIDDENS , MITCHELL & ASSOCIATES P.C.
Attorney for Debtor
/S/Ken Mitchell
BY: KEN MITCHELL,
5931 Snapfinger Pkwy, Suite 555
Decatur, Georgia  30035    770-987-7007
E-mail gmapclaw1@gmail.com.

13

## POST PETITION REVENUE AND EXPENSES AS OF JULY 2015

|  | INCOME | EXPENSES | NET INCOME |
|---|---|---|---|
| 2014 |  |  |  |
| OCT | 4758.99 | 3785.8 | 973.19 |
| NOV | 5106.69 | 4126.12 | 980.57 |
| DEC | 4976.48 | 5301.21 | -324.73 |
| 2015 |  |  |  |
| JAN | 5116.36 | 4757.77 | 358.59 |
| FEB | 6079.15 | 5973 | 106.15 |
| MAR | 6146.65 | 6491 | -344.35 |
| APR | 6034.65 | 5772.42 | 262.23 |
| MAY | 5534.64 | 5594.33 | -59.69 |
| JUNE | 7349.73 | 8382.74 | -1033.01 |
| JULY | 6,310.66 | 6199.05 | 111.61 |
| TOTAL | 57414 | 56383.44 | 1030.56 |

11

## MARIO M WATKINS PAYMENT SCHEDULES

| | CREDITOR | Claim Amount | Amount to b paid under plan | Monthly Payment |
|---|---|---|---|---|
| | Administrative Expense | 7,500.00 | 7,500.00 | 500 |
| | US Trustee Quaterly Fees | | 1,125.00 | 93.75 |
| **SECURED CLAIMS** | | | | |
| | HSBC/BENEFICIAL (f/k/a Caliber | | | |
| | 3780 Sherbrook Court | 273,338.00 | 273,338.00 | 1630 |
| | SELECT | | | |
| | 4022 Robir Circle | 154,987.00 | 120,000.00 | 1159 |
| **UNSECURED PRIORITY** | | | | |
| | Internal Revenue Service | 24,826.49 | 24,826.49 | 675.76 |
| **GENERAL Unsecured** | | | | |
| | Bank of America | 37,756.00 | 3,775.60 | 105 |
| | Chase Mortgage | 7,620.00 | 762.00 | 21 |
| | Citibank | 4,918.00 | 491.80 | 13 |
| | CitiFinancial | 5,335.00 | 533.50 | 53 |
| | Emory Adventist | 952 | 95.20 | 95.2 |
| | Macy's | 7,002.00 | 700.20 | 11 |
| | Portfilio Recovery | 880.00 | 88.00 | 88 |
| | Office Depot | 301.00 | 30.10 | 30.1 |
| | Sears | 4,500.00 | 450.00 | 12.5 |
| | The Home Depot | 200.00 | 20.00 | 20 |
| | IRS | 4,808.00 | 480.80 | 13.33 |
| Class 6 | McNally Weeks | 7,466.00 | 746.60 | 746 |
| Class 7 | Tamla Watkins | 9,141.00 | 2,285.00 | 190.41 |
| **Unsecured Student Loans** | | | | |
| | Academic | 226,082.85 | 226,082 | 250 |
| | Navient Solutions2 | 55504.57 | 55505.57 | 250 |
| | Navient Solutions3 | 66504.92 | 66504.92 | 250 |
| | Navient Solutions4 | 27,412.11 | 27412.11 | 250 |
| | Navient Solutions5 | 56014.39 | 56014.39 | 250 |
| | Total Claims | 983,049.33 | 868,767.28 | 6,707.05 |

**Debtor reserves the right to pay any claim in the amount of $500.00 or less in full on the distribution date.
**Payment on student loans are anticipated to begin in December 2016

3 YEAR POST CONFIRMATION BUDGET

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7-12 | Month 13-24 | Month 25-36 |
|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | |
| Net APS Salary | 5,030 | 5,030 | 5,280 | 5,280 | 5,280 | 5,280 | 34,680 | 84,000 | 84,000 |
| Rental Income | 1,030 | 1,030 | 1,030 | 1,030 | 1,030 | 1,030 | 6,690 | 14,440 | 18,000 |
| Total Income | 6,060 | 6,060 | 6,310 | 6,310 | 6,310 | 6,310 | 41,370 | 98,440 | 102,000 |
| **EXPENSES** | | | | | | | | | |
| Ch 11 Payments | 5,349 | 4,383 | 4,383.00 | 4,383 | 4,383 | 4,383 | 26,298 | 56,345 | 67,595 |
| Monthly Living Expenses | 3,985 | 2,500 | 2,000 | 2,000 | 2,000 | 2,000 | 12,000 | 28,800 | 31,680 |
| Total Expenses | 9,334 | 6,883 | 6,383 | 6,383 | 6,383 | 6,383 | 38,298 | 85,145 | 99,275 |
| Net Income | -3,274 | -823 | -73 | -73 | -73 | -73 | 3,072 | 13,295 | 2,725 |